## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *versus* | : | CRIMINAL NO. 16-104-LMA-EWD |
| | : | |
| FRANCIS ASIEDU DEBRAH | : | |

### PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and Francis Asiedu Debrah ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

### A.   THE DEFENDANT'S OBLIGATIONS

#### 1.   Guilty Plea

The defendant agrees to enter a plea of guilty to Count Two of an Indictment charging him with trafficking in embezzled pre-retail medical products in violation of 18 U.S.C. §§ 670(a)(3), 670(b)(1), and 670(c)(2).

#### 2.   Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court. Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request. Any financial information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

## B.     UNITED STATES' OBLIGATIONS

### 1.     Non-prosecution/Dismissal of Charges

The United States agrees that, if the Court accepts the defendant's guilty plea, it will move to dismiss the remaining counts of the Indictment after sentencing, and it will not prosecute the defendant for any offense related to the offenses charged in the Indictment.

### 2.     Motion for Third Point for Acceptance of Responsibility

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level. The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement, including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

### C.   SENTENCING

#### 1.   Maximum Statutory Penalties

The maximum possible penalty on Count Two is a term of imprisonment of 20 years, a fine of up to $250,000, and a term of supervised release of three years.  In addition, the defendant is subject to a civil penalty in an amount not more than the greater of three times the amount of the economic loss attributable to the violation, or $1,000,000.

In addition to the above, the Court must impose a special assessment of $100 which is due at the time of sentencing.  The Court may also order restitution.

#### 2.   Supervised Release

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions.  Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

#### 3.   Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court.  The Court could impose any sentence

up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

**4.    No Agreement Regarding Sentencing**

Except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing.  In particular, the United States reserves the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing.

**5.    Forfeiture**

The defendant agrees to forfeit any property constituting, or derived from, proceeds he obtained directly, or indirectly, as a result of the offense charged in Count Two of the Indictment.  The defendant understands that forfeiture of his property will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon him as part of his sentence.  The defendant further understands that, separate and apart from his sentence in this case, the United States may also institute civil or administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and forfeiture of all forfeitable assets, including taking all steps as requested by the United States to pass clear title to forfeitable assets to the United States.  The defendant agrees to hold the United

States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and determine that the defendant understands, the applicable forfeiture prior to accepting the defendant's plea.

## D.   **FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

Between in or about June of 2013 and in or about September of 2013, within the Middle District of Louisiana and elsewhere, Francis "Frank" Asiedu Debrah, the defendant, using the means and facilities of interstate commerce, did knowingly possess, and traffic in pre-retail medical products, that is, prescription drugs including Reyataz, Ziagen, Prezista, Lexiva, Norvir, Epzicom, Sustiva, Complera, Atripla, and Truvada, having a value of $5,000 or more, knowing the same to have been embezzled, stolen, by fraud and deception obtained, and unlawfully taken, carried away, and concealed, in violation of Title 18, United States Code, Section 670(a)(1), while employed by, and as agent of, an organization in the supply chain for the pre-retail medical products, that is, the Washington, District of Columbia Department of Health ("DOH") Warehouse.

DOH is a government agency which, among other things, operates a pharmacy warehouse ("DOH Warehouse") which received, stored and distributed prescription drugs intended for low-income residents of the District of Columbia.  This DOH Warehouse was a wholesale distribution center that was an organization in the supply chain for pre-retail medical products. Prescription drugs kept at the DOH Warehouse have not yet been made available for retail purchase by consumers.  Instead, drugs kept at the warehouse were shipped to associated pharmacies, which dispensed the drugs to individual consumers who were eligible for the drugs and for whom the drugs had been

prescribed by a medical professional. The primary supplier of pharmaceutical drugs for the DOH Warehouse was Amerisource Bergen. During the aforementioned time period, the defendant was an inventory manager who was responsible for ordering pharmaceutical drugs from suppliers, including Amerisource Bergen.

Among other duties, the defendant was involved with the receipt and warehousing of prescription drug shipments at the DOH Warehouse. The defendant was thus employed by an organization in the supply chain for the pre-retail medical products shipped to and from, and warehoused at, the DOH Warehouse. The defendant assisted Troy Edward Weaver ("Weaver") in his duties. Some of the shipments received from Amerisource Bergen occasionally contained shortages and overages of pharmaceutical drugs.

For several years prior to June 21, 2013, Weaver began placing many of the extra drugs from Amerisource Bergen into a box hidden from the rest of the inventory ("off-inventory drugs") at the DOH Warehouse instead of sending the extra drugs back to Amerisource Bergen. The off-inventory drugs included the HIV medications Sustiva, Complera, Prezista, Truvada, Atripla, Epzicom, Reyataz, Ziagen, Lexiva, and Norvir, and had a value of $5,000 or more.

In or around late 2012 or early 2013, the defendant and Weaver decided to sell these off-inventory drugs for a profit. So in or around late 2012 or early 2013, the defendant and Weaver devised a scheme to sell the off-inventory drugs to make money for both individuals. The defendant knew Individual A, who could help put the defendant and Weaver in contact with Alvin Watts ("Watts"), a pharmacist, known to Individual A, in order to sell the off-inventory drugs. Thereafter, the defendant and Watts spoke by telephone to negotiate the sale of the off-inventory drugs. During these communications, the defendant and Watts understood that the off-inventory drugs that Watts would purchase had been embezzled, taken, carried away and concealed. After a number of conversations between the defendant and Watts, Weaver communicated with Watts to further arrange the details of the sale. The defendant knew that Watts was located out-of-state.

Between on or about June 21, 2013 and on or about September 12, 2013, the defendant and Weaver sold at least $5,000 worth of off-inventory drugs, including Sustiva, Complera, Prezista, Truvada, Atripla, Epzicom, Reyataz, Ziagen, Lexiva, and Norvir to Watts, through Watts' couriers, Troy Taylor ("Taylor") and Broderick Landry ("Landry").    Weaver met Taylor in person on at least four occasions between June 21, 2013 and on or about September 12, 2013, and sold the off-inventory drugs to Taylor in exchange for approximately

$42,500, which was far below what Watts would have had to pay for the drugs had Watts purchased the drugs legitimately, from wholesale suppliers. The defendant knew that Taylor and Landry were traveling through interstate commerce and used the means and facilities of interstate commerce in order to consummate the sale of the off-inventory drugs. After each of the four transactions, Weaver split the proceeds with the defendant.

The defendant knew that after the drugs were sold by Weaver, the drugs would be transported through interstate commerce, and delivered to Watts. Watts, knowing that the drugs were pre-retail medical products that had been embezzled and then transported and trafficked, would add the drugs to the inventory of his own pharmacy and re-package and/or distribute the drugs to customers of his pharmacy.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the defendant further agree that such facts are sufficient to support conviction of the offense to which the defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation and any other relevant information.

## E.    BREACH AND ITS CONSEQUENCES

### 1.    Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this agreement:

> a.    failing to plead guilty to Count Two of the Indictment at re-arraignment;

b.      representing, directly or through counsel, to the United States or the
        Court that he will not plead guilty to Count Two of the Indictment;

c.      moving to withdraw his guilty plea;

d.      filing an appeal or instituting other post-conviction proceedings
        not authorized in Section F(2);

e.      disputing or denying guilt of the offense to which the defendant has
        agreed to plead guilty or denying or disputing any fact contained in the
        stipulated factual basis;

f.      concealing or disposing of assets with the specific intent of shielding
        such assets from forfeiture;

g.      providing false, misleading, or incomplete information or
        testimony, including financial information and testimony
        provided pursuant to Section A(2), to the United States; or

h.      violating the terms of this agreement or the supplement to the plea
        agreement in any other manner.

## 2.      **Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations

under the agreement and the supplement to the plea agreement.  In particular, the United States

may prosecute the defendant for any criminal offense.  In addition, any statements and

information provided by the defendant pursuant to this agreement (or the supplement to the

plea agreement) or otherwise, and any information and evidence derived therefrom, may be

used against the defendant in this or any other prosecution or proceeding without limitation.

Such statements and information include, but are not limited to, the plea agreement itself

(including the factual basis contained in Section D), the supplement to the plea agreement,

statements made to law enforcement agents or prosecutors, testimony before a grand jury or

other tribunal, statements made pursuant to a proffer agreement, statements made in the course

of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the

guilty plea), and statements made in the course of plea discussions.  The defendant expressly

and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made

by him personally (but not as to statements made by his counsel).  The defendant is not entitled

to withdraw his guilty plea.

### 3.    <u>Procedure for Establishing Breach</u>

The United States will provide written notice to the defendant or his attorney if it

intends to be relieved of its obligations under the agreement and the supplement to the plea

agreement as a result of a breach by the defendant.  After providing such notice, the United

States may institute or proceed with any charges against the defendant prior to any judicial

determination regarding breach.   However, the United States will obtain a judicial

determination regarding breach prior to using statements and information provided by the

defendant or any act of producing documents or items by the defendant pursuant to this

agreement or the supplement to the plea agreement, or any evidence or information derived

therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case.

The standard of proof in any proceeding to determine whether the plea agreement or the

supplement to the plea agreement has been breached is preponderance of the evidence.  To

prove a breach, the United States may use (1) any and all statements of the defendant, (2) any

and all statements of his counsel to the Court (including the United States Probation Office),

and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

## F.   WAIVERS BY THE DEFENDANT

### 1.   Waiver of Trial Rights

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial.  At a trial, the defendant would have the trial rights to be represented by counsel (and if necessary have the Court appoint counsel), to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt.  By waiving his right to a trial and pleading guilty, the defendant is waiving these trial rights.

### 2.   Waiver of Appeal and Collateral Remedies

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2).  This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation.  The defendant, however, reserves the right to appeal the following: (a) any sentence

which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court.  Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

### 3.      Waiver of Statute of Limitations

The defendant hereby waives all defenses based on the applicable statutes of limitation as to the offense charged in the Indictment including those that the United States has agreed to dismiss in Section B(1) and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement.  The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement.  The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### 4.      Waiver of Speedy Trial Rights

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to the offense charged in the Indictment including those that the United States has agreed to dismiss in Section B(1).  The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that

defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

## G.   **EFFECT OF AGREEMENT**

### 1.   **Effective Date**

This agreement and the supplement to the plea agreement are not binding on any party until both are signed by the defendant, defendant's counsel, and an attorney for the United States.  Once signed by the defendant, his counsel, and an attorney for the United States, the agreement and the supplement are binding on the defendant and the United States.

### 2.   **Effect on Other Agreements**

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court.  In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating.  The supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

### 3.   **Effect on Other Authorities**

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

### 4.    **Effect of Rejection by Court**

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement and the supplement to the plea agreement.  If the Court rejects the plea agreement and the supplement, the plea agreement and the supplement are no longer binding on the parties and are not binding on the Court.  If the Court rejects the plea agreement and the supplement, the defendant will be given the opportunity to withdraw his plea and such withdrawal will not constitute a breach of the agreement.  If the defendant does not withdraw his plea following rejection of the plea agreement and the supplement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

## H.    **REPRESENTATIONS AND SIGNATURES**

### 1.    **By The Defendant**

I, Francis Asiedu Debrah, have read this plea agreement and have discussed it with my attorney.  I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation.  I have not been threatened, intimidated, pressured, or coerced in any manner.  I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be.  I understand that representations by my attorney (or anyone else)

regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Indictment and discussed it with my attorney. I fully understand the nature of the charge, including the elements.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of the offense charged in Count Two of the Indictment.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_____                    DATE: 4/10/18 _____
Francis Asiedu Debrah
Defendant

**2.**      **By Defense Counsel**

I have read the Indictment and this plea agreement and have discussed both with my client, Francis Asiedu Debrah, who is the defendant in this matter. I am satisfied that the defendant understands the agreement and the charge against him, including the elements. I am also satisfied that the defendant is entering into the agreement knowingly and voluntarily. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____                    DATE: 4/10/18 _____
Marci Blaize
Counsel for Defendant

3.     **By the United States**

We accept and agree to this plea agreement on behalf of the United States.   This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

Brandon J. Fremin
United States Attorney
Middle District of Louisiana

DATE: April 6, 2018

Peter J. Smyczek
Assistant United States Attorney
Middle District of Louisiana

DATE: 4/6/2018